# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TRAFFIC AND PARKING CONTROL CO., INC., <br><br> Plaintiff, <br><br> v. <br><br> GLOBAL TRAFFIC TECHNOLOGIES, LLC, <br><br> Defendant. | Case No. 17-CV-117-JPS <br><br><br> **ORDER** |

  Plaintiff, Traffic and Parking Control Co., Inc. ("TAPCO"), filed an action against Defendant, Global Traffic Technologies, LLC ("GTT"), in Milwaukee County Circuit Court. In its original complaint, TAPCO alleged that it was as a dealer for GTT's products. The complaint arises from GTT's attempt to terminate the dealership agreement, which TAPCO believes was a violation of both the agreement and the Wisconsin Fair Dealership Law ("WFDL"), Wis. Stat. § 135.01 *et seq*. *See* (Docket #1-1).

  GTT removed the action to this Court pursuant to 28 U.S.C. § 1441 on the basis of the Court's diversity jurisdiction under 28 U.S.C. § 1332(a)(1). (Docket #1). On January 31, 2017, TAPCO moved to remand the case to state court, arguing that the amount in controversy did not cross the statutory threshold set out in Section 1332. (Docket #5). Shortly thereafter, on February 8, 2017, GTT filed a motion to dismiss TAPCO's complaint, arguing that it had failed to state a claim for violation of the WFDL or for breach of contract.

(Docket #7).[1] Both motions are fully briefed and, for the reasons stated below, they will be denied.

1.    **RELEVANT FACTS**

The relevant facts are drawn from TAPCO's amended complaint, which it filed on March 1, 2017. (Docket #13).[2] The Court relies upon the amended complaint, despite the fact that GTT's motion was first directed at the original complaint, because Count II, the count for which GTT seeks dismissal, was not altered in the amended complaint. *See* (Docket #13, #14, #20). Thus, the amendment has no effect on the Court's analysis.

TAPCO acts as a dealer for GTT's products, which include traffic and parking control devices and services. The arrangement permitted TAPCO to sell GTT's goods and use GTT's trademarks and other intellectual property for marketing. The companies' dealership agreement (the "Agreement") was dated April 8, 2010 and was amended on January 31, 2016. TAPCO alleges that GTT drafted the relevant portions of the Agreement.

For reasons not explained in the complaint or the parties' briefing, their relationship soured in late 2016. TAPCO claims that GTT sent it an email on November 3, 2016, announcing that the Agreement would be cancelled effective February 1, 2017. According to TAPCO, the November 3 email provides no reason whatsoever for the proposed cancellation. Thus, TAPCO believes that GTT does not have "good cause" to cancel the Agreement as required under the WFDL. *See* Wis. Stat. § 135.03. Additionally, although a

---

[1] As indicated below, GTT has narrowed its request to dismissal of the breach of contract claim only, apparently in light of TAPCO's more robust allegations regarding its WFDL claim in the amended complaint. *See infra* Part 2.2.

[2] The facts relevant only to the motion to remand are brief and will be addressed in the analysis below.

section of the Agreement purports to give either party the power to terminate the Agreement without cause on ninety days' written notice, TAPCO asserts that this provision is "in variance" with the WFDL and is unenforceable. As a result, TAPCO wants the Court to declare the November 3, 2016 notice of cancellation to be void.

TAPCO also raises a claim for breach of contract. In addition to claiming that the provision providing for termination without cause is invalid under the WFDL, TAPCO alleges that GTT's failure to provide any reason for its proposed cancellation violates its common-law duty of good faith and fair dealing. Moreover, TAPCO claims that the November 3, 2016 email is itself a violation of the Agreement because it does not constitute "written" notice, which under the Agreement is only achieved by personal delivery, registered mail, prepaid post with receipt requested, or facsimile. *See* (Docket #8-2 at 26 ¶13.9). As with the WFDL claim, TAPCO prays for a declaration that the cancellation is void and injunctive relief against the proposed cancellation. TAPCO does not seek compensatory damages or attorney's fees in this action. *See* (Docket #13 at 11–12, 14–15).

**2.     DISCUSSION**

The two pending motions can be resolved fairly easily. First, the Court finds that the amount in controversy meets the jurisdictional threshold. Second, the Court finds that TAPCO's allegations sufficiently state a claim for breach of contract. The Court will address each issue in turn.

**2.1     Diversity Jurisdiction and the Amount in Controversy**

Section 1441 allows a defendant to remove any civil action commenced in state court to the district court sitting in the district and division in which the action is pending. 28 U.S.C. § 1441(a). The state case must be one in which the district court would have original jurisdiction. *Id.* If the plaintiff believes

Page 3 of 12

Case 2:17-cv-00117-JPS   Filed 03/21/17   Page 3 of 12   Document 22

that removal was improper, it can request remand to the state court. *Id.* § 1447(c).

Here, GTT asserts that this Court has jurisdiction based on the diversity statute, Section 1332. To establish the district court's diversity jurisdiction under Section 1332(a)(1), a removing defendant must show not only complete diversity of citizenship between the parties (something TAPCO does not challenge here), but also that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *Id.* § 1332(a)(1). The amount in controversy at the time of removal controls the existence of jurisdiction. *See Tropp v. Western–Southern Life Ins. Co.*, 381 F.3d 591, 595 (7th Cir. 2004). In the Seventh Circuit, this inquiry is not confined to the plaintiff's prayer for damages. Instead, it includes more generally "the amount at stake to either party to the suit." *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 553 (7th Cir. 2002).

As the proponent of the Court's jurisdiction, GTT has the burden of showing by a preponderance of the evidence facts that suggest the amount-in-controversy requirement is met. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). However, GTT must merely provide a "good-faith estimate" that the stakes exceed $75,000. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006). Once this is achieved, the plaintiff can defeat jurisdiction only if "it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *Meridian Sec.*, 441 F.3d at 541. Mere uncertainty as to whether the claims will actual result in a sufficient amount of damages is immaterial. *Meridian Sec.*, 441 F.3d at 543.

In connection with its notice of removal, GTT's chief operating and financial officer Brian VanDerBosch ("VanDerBosch") submitted an affidavit

Page 4 of 12

Case 2:17-cv-00117-JPS   Filed 03/21/17   Page 4 of 12   Document 22

in which he testified that TAPCO's injunction against termination of the Agreement, if granted, would be worth more than $75,000. *See* (Docket #1-2). Specifically, he avers that GTT's sales to TAPCO for 2013–2016 have been over half a million dollars each year, and that, based on his experience and his knowledge of GTT's list prices, he "reasonably expects that the resale gross profit margin realized by [TAPCO] is approximately twenty percent" of GTT's annual sales to TAPCO. *Id.* ¶¶ 2–3. Thus, in VanDerBosch's view, TAPCO stands to make well over $75,000 if the dealership arrangement is ordered to continue.

TAPCO contests the sufficiency of VanDerBosch's affidavit, arguing that he does not have personal knowledge of TAPCO's business or financial records and therefore cannot judge the economic impact of the requested injunction. (Docket #6 at 2). For instance, VanDerBosch based his valuation on GTT's list prices, not on TAPCO's actual sale prices for GTT's goods. *Id.* According to TAPCO, VanDerBosch simply has no way to know what TAPCO's profit margins are and so cannot place a reliable dollar figure on the TAPCO-GTT relationship. *Id.*

Further, TAPCO asserts, the amount in controversy here is demonstrably under the $75,000 threshold. *Id.* TAPCO reasons that the dispute concerns only a 90-day period, since it challenges GTT's 90-day cancellation notice from November 2016 and GTT "could easily re-issue a second notice that complies with" the WFDL and the Agreement. *Id.* at 3. According to TAPCO, the relevant 90-day period is worth only about $31,000. *Id.*

GTT rejoins that while VanDerBosch's assessment is admittedly not precise, it does not have to be; it qualifies as a good-faith estimate of the value TAPCO expects to receive from its injunction, which is all that the

Seventh Circuit requires. (Docket #12 at 4). Next, GTT faults TAPCO for failing to produce actual evidence that the value of its claims is less than $75,000, something it should be in a position to do given that it controls all of its own financial records. *Id.* GTT also questions TAPCO's 90-day period hypothesis, arguing that TAPCO does not merely seek compensation for ninety days of harm but instead wants a permanent injunction against cancellation of the Agreement. *Id.* at 4–5.

The Court finds that GTT's submissions are sufficient to establish that the amount in controversy exceeds the jurisdictional threshold. First, the Court finds unavailing TAPCO's suggestion that there is only a 90-day window at issue in this case. This position does not account for TAPCO's request that GTT's termination of the Agreement not only be vacated but also enjoined in the future. *See* (Docket #13 at 15) (requesting permanent injunction against GTT from "going forward in any manner with the proposed termination" or "terminating the Dealership Contract between GTT and TAPCO"). Further, because TAPCO's claim is that good cause does not exist to terminate the Agreement, GTT could not simply reissue a proper notice of termination. Moreover, the Court does not credit TAPCO's apparent admission as to the scope of its claims since its review is limited to the state of affairs as of the time the notice of removal was filed. *Oshana*, 472 F.3d at 510–11; *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006) ("[E]ven an irrevocable promise not to accept more than the jurisdictional minimum" does not "authorize remand of a suit that was within federal jurisdiction when removed.").

Having set aside TAPCO's attempt to cabin the temporal scope of its claims, the Court next considers the evidence of the monetary value of those claims. The Court is satisfied that VanDerBosch's affidavit represents a good-

faith estimate of the amount in controversy here based on his knowledge of the business relationship between the two companies and the relevant prices of the goods at issue. Once made, TAPCO was required to come forward with some sort of evidence demonstrating to a "legal certainty" that VanDerBosch's estimate was unfounded. *Meridian Sec.*, 441 F.3d at 541. This it has not done. As GTT suggests, TAPCO could have submitted evidence of the actual profit margins it enjoys, yet TAPCO declined to do so. Indeed, TAPCO decided not to file a reply in support of its motion, thereby forgoing an additional opportunity to present some evidence on this point. Consequently, the Court concludes that the amount in controversy requirement is satisfied here. The motion to remand this matter to state court will be denied.

### 2.2     GTT's Motion to Dismiss for Failure to State a Claim

Having determined that this action is properly before the Court, it now turns to GTT's motion to dismiss Count II of the amended complaint.[3] Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a viable claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the. . .claim is and

---

[3]GTT originally sought dismissal of the entire complaint. *See* (Docket #8). After GTT filed its motion, however, TAPCO filed an amended complaint in an attempt to cure the alleged deficiencies in Count I, the WFDL claim. *See* (Docket #13 ¶¶ 1–65); (Docket #14 at 1). In its reply in support of its motion, GTT limits its arguments to addressing Count II of the amended complaint—the breach of contract claim. *See* (Docket #20). Additionally, GTT has filed an answer to the amended complaint in which it notes that its motion to dismiss is pending as to Count II but is silent regarding Count I. *See* (Docket #21 at 17 n.1). From this the Court gathers that GTT has abandoned its request to dismiss TAPCO's WFDL claim, and the Court will not address it further herein.

Page 7 of 12

Case 2:17-cv-00117-JPS   Filed 03/21/17   Page 7 of 12   Document 22

the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* at 480–81.

The parties do not appear to dispute that Wisconsin law governs the interpretation of the Agreement. *See* (Docket #13 ¶¶ 78–79); (Docket #8 at 5). However, the Court notes that this position is inconsistent with the Agreement itself, in which the parties agreed that Minnesota law would govern. (Docket #8-2 at 25 ¶ 13.5). The parties ignore this provision, and because the Court is applying basic precepts of contract law, it will do the same for purposes of the present motion. *See Wells Fargo Bus. Credit v. Hindman*, 734 F.3d 657, 666 n.3 (7th Cir. 2013).

A breach of contract claim in Wisconsin requires (1) a valid contract, (2) breach thereof, and (3) damages. *Matthews v. Wis. Energy Corp.*, 534 F.3d 547, 553 (7th Cir. 2008) (citing *Nw. Motor Car, Inc. v. Pope*, 187 N.W.2d 200, 202 (Wis. 1971)). GTT first argues that it did not breach the contract but instead terminated it as permitted under the Agreement. (Docket #8 at 5–6). GTT defends its November 3, 2016 email as sufficient notice, claiming that although the Agreement requires all notices in connection with it to be made "in writing" in certain specified forms, the contact information each party provided in that provision includes their respective email addresses. *Id.* at 6. Thus, GTT believes its email complied with the requirements of the Agreement. *Id.* Second, GTT asserts that TAPCO claimed no damages resulting from the alleged breach. *Id.* Finally, GTT states that TAPCO's theory

Page 8 of 12

based on the duty of good faith and fair dealing should be rejected as conclusory. *Id.* at 7.

TAPCO responds that its request for declaratory and injunctive relief only, without a claim for monetary damages, is permissible because it merely seeks guidance from the Court as to its legal relationship with GTT. (Docket #14 at 2). Further, TAPCO argues that email was inadequate as a method of notice under the plain language of the Agreement, which lists the permissible methods. *Id.* Any ambiguity in the provision regarding methods of notice should, in TAPCO's view, be construed against the drafter, GTT. *Id.* (citing Restatement (Second) of Contracts § 206).

In reply, GTT changes its tack slightly. Rather than argue that it fully complied with the notice provision of the Agreement, it now calls the November 3, 2016 email "substantial compliance" with that provision. (Docket #20 at 2–3). GTT suggests that Wisconsin law requires no more than substantial compliance with a contract, in the face of which TAPCO cannot maintain that there was a breach. *Id.* Additionally, GTT reiterates its belief that TAPCO has not alleged that it suffered damages. *Id.* at 3–4. It also contends that because TAPCO "does not identify any existing disputes with GTT, so far as the [A]greement is concerned," there is nothing for the Court to declare, thereby eliminating TAPCO's prayer for declaratory relief. *Id.*

The Court finds that TAPCO's allegations pass muster at this early stage. As for GTT's arguments regarding its compliance with the Agreement's notice provision, these are matters that require development in discovery. In interpreting contracts, Wisconsin courts seek to ascertain and enforce the true intentions of the contracting parties. *Town Bank v. City Real Estate Dev., LLC*, 793 N.W.2d 476, 484 (Wis. 2010). This is done primarily by resort to the contract language itself, which is construed according to its plain

and ordinary meaning. *Id.* The court will look to extrinsic evidence regarding the parties' intent only if that language is ambiguous. *Id.* TAPCO alleges that GTT's November 3 email was not a permissible method of notice under the Agreement, and at least on its face, the Agreement corroborates TAPCO's claim. Construing the complaint's allegations and inferences therefrom in TAPCO's favor, as it must, the Court finds that the contract as alleged is not ambiguous. The Court cannot look behind these allegations in the present posture, so GTT's defense—that the notice term is ambiguous and that its reading of the notice provision is better—is an argument that must be reserved for later. It would be inappropriate to decide whose reading of the Agreement is the better one without the benefit of discovery on such matters.

Nor is the Court persuaded by GTT's argument about TAPCO's lack of damages. It is not clear what GTT means on this point. If the contention is that TAPCO has not alleged harm resulting from the termination of the Agreement, this must be rejected. TAPCO has alleged that it invested substantial time and money into its efforts as a dealer for GTT which it will lose if the Agreement is terminated. *See* (Docket #13 ¶¶ 41–42). Moreover, loss of the dealership arrangement will make TAPCO less competitive in the relevant market. *Id.* ¶¶ 37–38. These allegations represent the harm one might expect from termination of such a contract and certainly suffice at the pleading stage.

Additionally, to the extent that GTT believes that TAPCO must seek monetary damages to maintain a breach of contract claim, this is simply untrue. Contracting parties often seek a declaration of their rights or obligations under disputed agreements, and injunctive relief often compels a breaching party to come into compliance with an agreement. *See* Restatement (Second) of Contracts § 357 (specific performance); *Tempco Elec.*

*Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987) (declaratory relief). TAPCO seeks both types of relief here. (Docket #13 at 14–15). The Court need not decide whether each type of relief is actually warranted in this case to reject GTT's categorical claim that a prayer for money damages is *always* required in contract cases.[4] As result, the Court will deny GTT's motion to dismiss Count II of the amended complaint.

### 3. CONCLUSION

For the reasons stated above, the Court concludes that it has jurisdiction over this action and that TAPCO has stated a viable claim for breach of contract. As such, both TAPCO's motion to remand and GTT's motion to dismiss must be denied.

Accordingly,

**IT IS ORDERED** that Plaintiff Traffic and Parking Control Co., Inc.'s motion to remand (Docket #5) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Global Traffic Technologies LLC's motion to dismiss (Docket #7) be and the same is hereby **DENIED**.

---

[4]That is not the holding of GTT's sole cited case, *Black v. St. Bernadette Congregation of Appleton*, 360 N.W.2d 550 (Wis. Ct. App. 1984). There, the court found that where grounds existed to terminate an employee, the employer's failure to follow the strict contractual procedures for termination did not cause the employee recoverable damages. *Id.* at 554. The flaw in the employee's case was not a lack of pecuniary harm but his failure to prove that the harm would not have occurred in the absence of the employer's misconduct. *See id.*

Dated at Milwaukee, Wisconsin, this 21st day of March, 2017.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge